UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICHARD PULLIAM, *et al.*,      )
      )
      Plaintiffs,      )
      )
      v.      )      2:13-cv-00456-JDL
      )
PENNYMAC MORTGAGE      )
INVESTMENT TRUST HOLDING I,      )
LLC, *et al.*,      )
      Defendants.      )

**RECOMMENDED DECISION ON MOTION TO DISMISS**

In this action, Plaintiffs Richard and Tina Pulliam seek a declaratory judgment, equitable

remedies, and other relief related to a state court foreclosure proceeding regarding certain real

property located in Auburn, Maine. The matter is before the Court on the Motion to Dismiss of

Defendants PennyMac Mortgage Investment Trust Holding I, LLC and PennyMac Loan Services,

LLC (ECF No. 11).[1]

Through their motion, Defendants contend that Plaintiffs fail to state a claim upon which

relief can be granted. Following a review of the pleadings, and after consideration of the parties'

arguments, as explained below, the recommendation is that the Court grant the motion.

**FACTUAL BACKGROUND**

The facts set forth herein are derived from Plaintiffs' Amended Complaint, which facts are

deemed true for purposes of evaluating Defendants' motion to dismiss. *Blanco v. Bath Iron Works

Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011). In addition, the facts can be informed by any

exhibits attached to Plaintiffs' pleadings, to the extent the exhibits are material to the motions to

---

[1] The Court referred the motions for report and recommended decision.

dismiss. *Freeman v. Town of Hudson*, 714 F.3d 29, 35 (1st Cir. 2013) ("On a motion to dismiss, a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto[.]"). The Court also may take judicial notice of matters of public record, including state court filings. *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011). However, the Court need not credit conclusory legal allegations. *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013).

Plaintiffs allege that in 2007, they mortgaged the subject property to secure a debt. (First Am. Compl. ¶ 35.) Defendant PennyMac Mortgage Investment Trust Holdings I, LLC is the successor mortgagee through assignment. (*Id.* ¶ 37.) Defendant PennyMac Loan Services, LLC is identified as the loan servicer of the subject mortgage loan. (*Id.* ¶ 38.) Plaintiffs invoke this Court's jurisdiction based on the diversity of citizenship and an amount in controversy in excess of $75,000. (*Id.* ¶ 3.)

According to the Amended Complaint, in April 2013, PennyMac Loan Services commenced a foreclosure action in state court on behalf of PennyMac Mortgage Investment Trust Holdings I. In the Amended Complaint, the Pulliams allege that the property "was sold at auction" and "[a] foreclosure deed was recorded in the Androscoggin County Registry of Deeds [on] June 27, 2013." (*Id.* ¶ 39.) A review of the Lewiston District Court's docket, however, of which docket the Court may take judicial notice, contradicts Plaintiff's allegations. The state court docket reflects that PennyMac Mortgage Investment Trust Holdings filed the foreclosure action on June 26, 2013, that the clerk issued a certificate of foreclosure on the same date, and that the foreclosure action is still pending in the Lewiston District Court. In other words, a review of the state court docket reveals that the state court has not issued a judgment of foreclosure or a deed.[2]

---

[2]  These factual corrections are important in part because if the state court had entered judgment of foreclosure, the *Rooker-Feldman* doctrine, which prevents a federal district court from reviewing a state court judgment, likely would

Plaintiffs maintain that they have never been in default because PennyMac Loan Services acted in the role of a surety and "made all Plaintiffs' payments" under the note "pursuant to their servicing agreement." (*Id.* ¶ 40; *see also id.* ¶¶ 9-30.)[3] Plaintiffs, therefore, assert that "the foreclosure and foreclosure proceedings were invalid." (*Id.* ¶ 41.)

In this action, Plaintiffs ask the Court to declare that the foreclosure "deeds" recorded in the Registry are invalid and void, determine that Defendants have no interest in the property, restrain Defendants from any further foreclosure actions or evictions pending trial, and award damages for slander of title and abuse of process. (*Id.* ¶¶ 50-59.)[4]

## DISCUSSION

Defendants argue that dismissal is appropriate because Plaintiffs' action is based on the erroneous notion that the securitization of Plaintiffs' loan discharged Plaintiffs' obligation to pay (Motion to Dismiss at 5), and because Plaintiffs' assertion that they have not been in default of the loan and mortgage is unsupported factually and is legally untenable (*id.* at 5-6; Reply at 3-4). Defendants also challenge the sufficiency of Plaintiffs' allegations regarding their remaining claims (i.e., that Defendants failed to satisfy Maine's foreclosure statutes and procedural requirements, that Defendants did not comply with certain provisions of the Uniform Commercial Code, and that Defendants' conduct constitutes slander of title and abuse of process). (*Id.* at 7-11.)

---

have compelled dismissal. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005) (discussing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476 (1983), and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923)).

[3] Plaintiffs allege that their promissory note contains a provision reading "any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this note, is also obligated to keep all of the promises made in this note." (Am. Compl. ¶ 26.) They further allege that PennyMac Loan Services "took over their obligations in the Note . . . pursuant to their servicing agreement." (*Id.* ¶ 40.)

[4] In their initial complaint, Plaintiffs sought to bring their action on behalf of a class. Plaintiffs withdrew the class allegations in their First Amended Complaint.

## A.    Motion to Dismiss Standard

In its assessment of a motion filed pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco*, 802 F. Supp. 2d at 221 (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)).   To overcome the motion, Plaintiffs must establish that their allegations raise a plausible basis for a fact finder to conclude that they are entitled to the relief that they request.  *Id.*  "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'"  *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)).

## B.    Plaintiffs' Surety Theory

According to Plaintiffs' allegations, Defendants have a pooling and servicing agreement that requires PennyMac Loan Services "to advance sums of principal and interest due but not received from borrowers, to the trustees of mortgage backed trusts." (Am. Compl. ¶ 13.)[5]   This contractual provision, according to Plaintiffs, is known as a delinquency advance clause and obligated PennyMac Loan Services to make Plaintiffs' payments.[6]  (*Id.* ¶¶ 14-15.)  Plaintiffs

---

[5] In this case, the trust to which payment is to be made is PennyMac Mortgage Investment Trust Holdings I.
[6] As alleged:

> 13. GSE Master Trust Agreements and all pooling and servicing agreements of private label mortgage securitizations state that servicers may be required to advance sums of principal and interest due but not received from borrowers, to the trustees of mortgage backed trusts. Simply put, if a mortgagor does not make the monthly payment due on the note, the mortgage servicer is required to make the payment to the trust, which is then distributed to the security holders. These payments are also known in the mortgage securities industry as "delinquency advances".
> C. Plaintiffs' General Allegations
> 14. All PSA's contain "delinquency advance clauses" that contractually obligate the mortgage servicer to "advance" all sums of principal and interest due on the notes, to the trust (mortgagee and noteholder), regardless of whether or not those sums were received by the servicer from the mortgagor.  When a mortgagor fails to pay, the servicer is contractually obligated to pay the mortgagor's obligation to the trustee.

(Am. Compl. ¶¶ 13-14.)

maintain that as the result of this contractual arrangement between the Defendants, by operation

of law, PennyMac Loan Services became a "surety" of Plaintiffs' debt such that the payments that

PennyMac Loan Services made to PennyMac Mortgage Investment Trust Holdings I satisfied

Plaintiffs' obligation to pay.  (*Id.* ¶¶ 16-20.)  Based on this theory, Plaintiffs contend that the state

court foreclosure action is wrongful.  (*Id.* ¶¶ 50-59.)

"A suretyship is a contractual arrangement in which one party, the 'surety', agrees to back

up the obligation of another, termed the 'principal' or 'principal debtor', the latter bearing the

primary burden of performing for the creditor." *Rhode Island Hosp. Trust Nat. Bank v. Ohio Cas.*

*Ins. Co.*, 789 F.2d 74, 77 (1st Cir. 1986) (citing 10 W. Jaeger, *Williston on Contracts* § 1211, at

683 (3d ed. 1967) and L. Simpson, *Simpson on Suretyship* 4–7 (1950)).  Typically, a surety "joins

the original contract with the principal and may be sued as an unconditional promisor along with

the principal." *Id.* at 78. [7]  "Generally, surety contracts are subject to the same rules of construction

as other contracts." *In re Sinking of M/V Ukola*, 806 F.2d 1, 4 (1st Cir. 1986).

> Pursuant to Maine contract law, an agreement is legally binding if the parties
> "mutually assented to be bound by all its material terms; the assent [was]
> manifested in the contract, either expressly or impliedly; and the contract [was]
> sufficiently definite to enable the court to determine its exact meaning and fix
> exactly the legal liabilities of the parties." *Stanton v. Univ. of Me. Sys.,* 2001 ME
> 96, ¶ 13, 773 A.2d 1045 (quotation marks omitted).  If each party communicated to
> the other a "distinct and common intention," the contract will be enforceable.  *Id.*
> (quotation marks omitted).

*Barr v. Dyke*, 2012 ME 108, ¶ 13, 49 A.3d 1280, 1286.

As alleged, PennyMac Loan Services was not party to Plaintiffs' original note, either as a

surety or in any other capacity.  Instead, PennyMac Loan Services assumed certain contractual

obligations to PennyMac Mortgage Investment Trust Holdings several years after Plaintiffs signed

---

[7]  Surety agreements are sometimes classified as forms of insurance.  *See* 24-A M.R.S. § 3.

the note and mortgage in favor of the predecessor mortgagee. (Am. Compl. ¶¶ 35-38.) Under these circumstances, to establish a surety relationship, PennyMac Loan Services would have had to promise to assume and pay Plaintiffs' debt upon Plaintiffs' default. Plaintiffs have not alleged such a promise, nor have Plaintiffs asserted facts from which one could reasonably infer that PennyMac Loan Services made such a promise to Plaintiffs or to PennyMac Mortgage Investment Trust Holdings.

Plaintiffs cite 11 M.R.S. § 3-1602 in support of their argument that the payments by PennyMac Loan Services to PennyMac Mortgage constitute payments on behalf of Plaintiffs. (Response at 10.) Section 3-1602(1)(a) provides in pertinent part that "an instrument is paid to the extent payment is made [b]y or on behalf of a party obligated to pay the instrument." This argument is unpersuasive. As Judge Zobel of the District of Massachusetts observed when addressing a similar argument:

> The problem with plaintiffs' theory is that the servicers' advance payments were not made on behalf of plaintiffs. Instead, these payments are made pursuant to separate contractual obligations between the servicers and the trusts. . . .
>
> Furthermore, the servicers' advance payments would only be considered to be "on behalf of" the plaintiffs if the servicers actually intended to extinguish the plaintiffs' repayment obligations. *See* 6A Anderson U.C.C. § 3–603:89 (West 2012); 60 Am.Jur.2d Payment § 1 (West 2012). The proposed complaint gives no plausible reason to believe the servicers held that intent.

*Ouch v. Fed. Nat. Mortgage Ass'n*, No. 1:2011-cv-12090, 2013 WL 139765, at *3 (D. Mass. Jan. 10, 2013), *appeal docketed*, No. 13-1209 (1st Cir. Feb. 11, 2013), *argued* (June 5, 2013).

Although the parties have not submitted the trust agreement or the pooling and servicing agreement, which documents Judge Zobel was able to review in *Ouch*, the parties' failure to present the documents in this case is not fatal to Defendants' motion. [8] Significantly, Plaintiffs

---

[8] Plaintiffs have attached to their response the trust agreement reviewed by the District of Massachusetts in *Ouch*. (ECF No. 12-2, PageID # 230-238.)

reference the pertinent provisions of the documents, but do not allege that the documents reflect that PennyMac Loan Services intended its payments to benefit Plaintiffs. To the contrary, they allege that PennyMac Loan Services became a surety "by operation of law," and not because the parties intended to establish PennyMac Loan Services as a surety. Judge Zobel's sound analysis, therefore, is equally applicable in this case.

Because all of Plaintiffs' theories of recovery are contingent upon a determination that PennyMac Loan Services made payments on behalf of and for the benefit of Plaintiffs, and given the absence of any plausible factual or legal basis upon which a court could determine that the payments were made for Plaintiffs' benefit, dismissal of Plaintiffs' Amended Complaint is warranted. *Genzyme Corp.,* 622 F.3d at 68 ("[T]o survive a motion to dismiss, a complaint must establish 'a plausible entitlement to relief.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).

CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court grant Defendants' Motion to Dismiss (ECF No. 11), and dismiss Plaintiffs' Amended Complaint.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

June 10, 2014